CHARLES LAWRIE, Plaintiff-Appellee, *v.* THE DEPARTMENT OF PUBLIC
AID, Defendant-Appellant.

First District (4th Division)    No. 62623

Opinion filed February 10, 1977.

JOHNSON, J., dissenting.

William J. Scott, Attorney General, of Chicago (Robert G. Epsteen, Assistant
Attorney General, of counsel), for appellant.

Hopkins, Sutter, Mulroy, Davis and Cromartie, and Lord, Bissell & Brook, both
of Chicago, for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the
court:

The plaintiff, Charles Lawrie, is a mentally retarded adult who resides
at Beverly Farm, Godfrey, Madison County, Illinois. Plaintiff first applied
for public aid on April 6, 1972, to pay for support at Beverly Farm. The
application was denied by the Madison County Department of Public Aid

on April 26, 1972. The reason given for the denial of aid is that Beverly Farm refused to promise to accept the payment of the Department as payment in full, as required by the Department's regulation (Topic 5556.3) which prohibits supplementation of public assistance. Plaintiff appealed the denial of his application by notice to the Department of Public Aid, on June 23, 1972. A hearing was held, and on October 20, 1972, the Department informed the plaintiff his appeal had been denied. Plaintiff then filed a complaint under the Administrative Review Act. After briefs and hearings, the Circuit Court of Cook County, on April 9, 1975, entered an order reversing the decision of the Department, and holding the Department's policy of "no supplementation" null and void as not authorized by the Public Aid Code and violative of the Equal Protection Clauses of the United States Constitution and the Illinois Constitution. From this order the defendant, the Department of Public Aid, brings this appeal.

The issues are whether the Public Aid Department's regulation prohibiting supplementation is contrary to Illinois statutory law and whether such policy denies the plaintiff equal protection of the law, as provided for in the State and Federal constitutions. The issues do not include problems of evidence. The facts in this case, as presented above, are undisputed and are not in question.

In order to better understand the issues it is necessary to set out some portions of the Illinois Public Aid Code (Ill. Rev. Stat. 1971, ch. 23).

The "Public Purpose" section of the Public Aid Code provides, *inter alia*:

> "The purpose of this Code is to assist in the alleviation and prevention of poverty and thereby to protect and promote the health and welfare of all the people of this State.
>
> * * *
>
> The maintenance and strengthening of the family unit shall be a principal consideration in the administration of this Code. All public aid policies shall be formulated and administered to achieve this end." Ill. Rev. Stat. 1971, ch. 23, par. 1—1.

The section of the Public Aid Code entitled "Amount of Aid" provides:

> "The amount and nature of financial aid granted to or in behalf of aged, blind, or disabled persons shall be determined in accordance with the standards, rules and regulations of the Illinois Department. Due regard shall be given to the requirements and conditions existing in each case, and to the amount of property owned and the income, money contributions, and other support, and resources received or obtainable by the person, from whatever

source. The aid shall be sufficient, when added to all other income, money contributions and support, to provide the person with a livelihood compatible with health and well-being." Ill. Rev. Stat. 1971, ch. 23, par. 3—5.

The "Declaration of Public Policy" section of the Code provides:

"It is the intent of this Code that the financial aid and social welfare services herein provided supplement rather than supplant the primary and continuing obligation of the family unit for mutual help in times of unemployment, illness, or other misfortune. The obligation of the family unit is particularly applicable when a member is in necessitous circumstances and lacks the means of a livelihood compatible with health and well-being.

It is the purpose of this Article to provide for determination of the financial circumstances of legally responsible relatives, as defined in Section 2—11 of Article II, and for the enforcement of the legal obligation of support by those relatives able to furnish support, in whole or in part, to applicants for and recipients of financial aid. It is not, however, a condition of eligibility for financial aid that there be no responsible relatives who are reasonably able to provide such support in whole or in part. Nor, except as provided in Section 10—8, shall the existence of such relatives or their payment of support contributions disqualify a needy person for financial aid." Ill. Rev. Stat. 1971, ch. 23, par. 10—1.

The caveat relating to section 10—8, in the last sentence of the preceding section of the Code, concerns applicants whose families are willing to provide full support. Those applicants are removed from the rolls.

The section of the Public Aid Code relied upon most heavily by the Department in the case at bar is the section regarding the conditions of receipt of vendor payments, or payments made from the Department directly to the institution supplying goods or services to a recipient. This section provides, in pertinent part:

"A vendor payment * * * shall constitute payment in full for the goods or services covered thereby. Acceptance of the payment by or in behalf of the vendor shall bar him from obtaining, or attempting to obtain, additional payment therefor from the recipient or any other person. A vendor payment shall not, however, bar recovery of the value of goods and services the obligation for which, under the rules and regulations of the Illinois Department, is to be met from the income and resources available to the recipient, and in respect to which the vendor payment of the

Illinois Department or the local governmental unit represents supplementation of such available income and resources.

* * *

Any vendor who accepts a vendor payment and who knowingly obtains or attempts to obtain additional payment for the goods or services covered by the vendor payment from the recipient or any other person shall be fined not less than $50 nor more than $500, or be imprisoned for not more than 6 months, or both." Ill. Rev. Stat. 1971, ch. 23, par. 11—13.

Other sections of the Code grant the Department the power to establish standards by which need for public aid will be determined (Ill. Rev. Stat. 1971, ch. 23, par. 12—4.11), and to make all rules and regulations as may be necessary or desirable for carrying out the provisions of the Code (Ill. Rev. Stat. 1971, ch. 23, par. 12—13).

The Department claims section 3—5 of the Code requires the Department to determine the applicant's need, and when such need is determined section 11—13 of the Code prohibits supplementation.

Fairly read, section 3—5 of the Code does not impose a limitation on supplementation, it merely requires the amount of Public Aid granted may not be less than an amount sufficient to support the recipient.

The portion of the Code which is most misunderstood is the first paragraph of section 11—13 of the Act. The first two sentences of the paragraph bar the vendor institution from obtaining payments in addition to the public aid payments. The Department maintains this allows the Department to strike an applicant from the rolls where the maintaining institution accepts supplementary amounts from the applicant's family.

The Department overlooks the third sentence of section 11—13, which limits the broad scope of the first two sentences. The third sentence of section 11—13 provides the issuance of public aid does not bar the maintaining institution from recovering supplemental payments from the resources available to the recipient. This sentence, together with a full reading of the Public Aid Code, fails to show the Department is authorized to deny an applicant aid because the maintaining institution refuses to accept as payment in full the rate approved by the Department.

The Department's regulation in question (Topic 5556.3) is not authorized by the Code. The regulation reads:

"Licensed Facilities

A private * * * institution * * * whether operated for profit or not, which undertakes through its ownership or management to provide sheltered care or nursing care for three or more persons, not related to the operator by blood or marriage, who by reasons of illness or infirmity are unable to care for themselves, is subject to licensing by the State Department of Public Health * * *.

Licensed facilities are approved for the care of public assistance recipients when:

* * *

2. The facility agrees to provide care for recipients in accordance with the policy of the Department of Public Aid and to accept as payment in full the rate approved by this Department."

The "Purpose" section of the Code provides all policy decisions should aim to maintain and strengthen the family unit. The regulation (Topic 5556.3) generally serves only to divide the family. The family is prohibited from providing aid over and above the aid offered by the State. This has the effect of forcing parents to refuse further support to their mentally retarded child as a condition of receiving aid from the State. This effect is in direct contradiction with the "Declaration of Public Policy" section of the Code (Sec. 10—1) which provides the existence of support payments by relatives shall not disqualify a needy person from financial aid.

■■ ■ "It is axiomatic to say an administrative agency, such as the Department of Public Aid, has the power to issue only such rules and regulations as are authorized by statute and such rules and regulations must be in accord with the standards and policies set forth in the statute. The Public Aid Code reveals the legislature intended to allow parents of recipients to supplement public aid. Therefore, the trial judge properly found the challenged regulation null and void, as contrary to Illinois statutory law.

The trial judge's final order, in addition to finding the Department's regulation unauthorized by the Public Aid Code, found the regulation to be violative of the Equal Protection clauses of the United States Constitution and the Illinois Constitution. On review there is no need for this court to determine the constitutionality of the Public Aid Code, since we have rendered void the Department's regulation and have, in effect, interpreted the Public Aid Code in a manner which no one now claims is unconstitutional. Nevertheless, this court deems it proper to comment on the constitutionality of the Public Aid Code, assuming arguendo the challenged regulation is consistent with the Code.

Article I, section 2 of the Illinois Constitution provides:

"No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Ill. Const. 1970, art. I, §2.

Amendment 14 of the United States Constitution provides, in pertinent part:

"No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. 14.

The Department of Public Aid claims the policy of "no

supplementation" is consistent with "equal protection" since all persons in need of financial aid for their care and livelihood will receive the same standard of care.

Mr. Lawrie claims he would not receive the same standard of care as others. The Department of Public Aid does permit supplementation of its grants by other State agencies, such as the Department of Mental Health, whereas Mr. Lawrie has been denied the opportunity to accept supplementation. In addition, supplemental aid from the Department of Mental Health was not available in Madison County, wherein Mr. Lawrie resides.

■■ Whether an act is open to the charge that it denies equal protection of the law depends, not on whether the parties affected have been discriminated against, but whether there is a reasonable basis for the classification made by the statute. (*People ex rel. Rusch v. Ladwig* (1937), 365 Ill. 574, 7 N.E.2d 313, 319.) No reasonable basis exists for prohibiting Mr. Lawrie from utilizing supplementation while allowing other Public Aid recipients to receive supplementation from the Department of Mental Health, which supplementation is not available to Mr. Lawrie. Since this forfeiture classification does not include all who are similarly situated with respect to the purpose of the law, which is to provide all recipients with the same standard of care, there is a prima facie violation of the equal protection requirement of reasonable classification.

Moreover, every needy person has a right to accept support from his parents, even while accepting public aid. Whether the amount of support from the family is a token amount or a substantial amount is material to the question of the amount of public aid needed but is not material to the question of total rejection of the application for aid. This right to accept family support is fundamental. Automatically disqualifying someone who accepts a certain small amount of supplemental support from his parents is arbitrary and unreasonable. This type of forfeiture classification imposes a burden upon a wider range of individuals than those which the law provides.

Entirely forfeiting public aid to one who accepts a small amount of money from his family is patently overinclusive and denies equal protection of the law under the United States Constitution as well as under the Illinois Constitution.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby affirmed.

Affirmed.

JIGANTI, J., concurs.

Mr. JUSTICE JOHNSON, dissenting:

I dissent. The majority, by its interpretation of the Illinois Public Aid Code, and in ruling upon the constitutionality of the "no supplementation" policy of the Illinois Department of Public Aid, misapprehends the functioning of the Department and contravenes the true purpose of public aid.

The purpose of public welfare is to aid those individuals truly unable to maintain a decent standard of living. (Ill. Rev. Stat. 1975, ch. 23, par. 1—1.) A person who is infirm but who has a source of ready financial support is not in need of public assistance merely because he is infirm. Section 3—1.2 of the Public Aid Code, provides in pertinent part as follows:

> "Income available to the person, when added to contributions in money, substances, or services from other sources, including contributions from legally responsible relatives, must be insufficient to meet the person's basic maintenance needs as defined by standards established by the Illinois Department." (Ill. Rev. Stat. 1975, ch. 23, par. 3—1.2.)

Although the family of a disabled person may not be legally obligated to contribute to his financial support, where the family is in fact supporting the disabled person, he is no longer in need of public assistance. This is true even where the individual would otherwise be eligible to receive public aid.

The plaintiff's family has for many years expended the sums necessary to maintain plaintiff in a private institution of their choice. Now, plaintiff's family asserts that it is entitled to public reimbursement in order to keep plaintiff in that private facility. The reasoning behind this assertion is that if plaintiff were to be institutionalized in an authorized State facility, the State would expend a greater sum on his care and maintenance than would be required to supplement the family's contribution to their chosen private facility. Thus, by keeping plaintiff in a private nonauthorized facility, the State will actually save money. By analogy, if one chooses to send his child to a private school, the State should be required to reimburse that person, at least to the extent of the difference between the amount he is able to pay, or the amount he chooses to pay, and the total cost of tuition. Since that difference will probably be a lesser sum than would be allocated to the child were he to attend a public school, the parent will save the State money by sending his child to a private school and receiving reimbursement from the State. This analogy should illustrate the fallacy of the plaintiff's argument.

Firstly, if plaintiff were never placed in a State institution, the State would not expend any funds for his care and maintenance. That is, the State does not have a check automatically allocated to plaintiff for him to

spend as he chooses simply because plaintiff is disabled. Secondly, the State's monthly public aid bill will not be reduced because plaintiff, and others similarly situated, are not placed in State authorized facilities. Those facilities will continue to look toward the State to pay a share of the cost of maintenance. Their buildings will still have to be heated, lighted, cleaned, and generally maintained even if plaintiff is not placed therein. These authorized facilities are able to accept the State's rates as a total payment for quality patient care because the State can fill their beds with patients who are public aid recipients. Thus, if many patients are removed from the authorized facilities, and the State is required to reimburse private institutions for the more expensive care of those patients, the actual per patient cost for those patients remaining in authorized facilities may increase.

In affirming the ruling of the trial court in the instant case, the majority has determined that disabled persons whose families are willing to contribute to their support are entitled to public funds in order to supplement what may be a superior standard of care in a private nonauthorized facility of their choice.

The majority has sustained plaintiff's arguments that (1) the Department of Public Aid's "no supplementation" regulation was not authorized by statute, and (2) the regulation violates plaintiff's right to equal protection under the law. I am compelled to disagree.

The essential issue is whether or not the Department's regulation is reasonable, that is, is the regulation reasonably related to a valid purpose. In *Johnson's Professional Nursing Home v. Weinberger* (5th Cir. 1974), 490 F.2d 841, 844, the United States Court of Appeals for the Fifth Circuit quoted the Supreme Court in part as follows:

> "Where the empowering provision of a statute states simply that the agency may 'make * * * such rules and regulations as may be necessary to carry out the provisions of this Act,' we have held that the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.' "

The court of appeals followed the "reasonably related" standard and stated further that deference should be given to "an administrator's interpretation of the statutory scheme he carries out [and], those who attack that interpretation necessarily shoulder a heavy burden." (*Johnson's Professional Nursing Home v. Weinberger* (5th Cir. 1974), 490 F.2d 841, 844.) The *Johnson* court held that a regulation promulgated by the Department of Health, Education and Welfare was within the authority of the Department's Secretary, and was consistent with the legislative formula for the administration of programs with efficiency, economy, and quality of care. The regulation required those States

allowing supplementation payments to patient care facilities from relatives not legally obligated to contribute to the Medicaid recipient's support to submit to the agency plans to gradually eliminate such supplementation. The court refused to "substitute our economic judgment for that of HEW." It refused to "second-guess HEW in an area of its expertise \* \* \*." (*Johnson's Professional Nursing Home v. Weinberger* (5th Cir. 1974), 490 F.2d 841, 844-45.) To further evidence the reasonableness of the Department's policy to eliminate supplementation from programs receiving Federal funds, the *Johnson* court examined the legislative objectives supportive of this policy authorized by the Department. The court found that:

> "Although it did not *by statute* proscribe supplementation Congress recognized the undesirability of the practice:
>
>> There are wide variations among the States in the manner of financing the cost of nursing home care provided to the needy. In some States, the full cost of care is paid. In others, a negotiated rate is developed which may or may not approximate the reasonable cost or reasonable charges for the services provided. Some States, however, depend upon the supplementation of the State agency's below-cost allowances for care with contributions from relatives or the needy individual himself. As a matter of public policy, it would be best for all concerned: the needy individual, his relatives, the State agency, and the nursing home if the reimbursement made by the State represented the reasonable cost or reasonable charges for comparable services.
>>
>> \* \* \*
>
> S. Rept. No. 744, 90th Cong., 1st Sess., at 187-188 (1967), U.S. Code Cong. and Admin. News, p. 3026." *Johnson's Professional Nursing Home v. Weinberger* (5th Cir. 1974), 490 F.2d 841, 845.

There can be no doubt that the Illinois Department of Public Aid was well within its statutory grant of authority when it enacted its "no supplementation" regulation and, further, when it denied the plaintiff's application for public assistance. The Public Aid Code provides that:

> "The Department shall make all rules and regulations and take such action as may be necessary or desirable for carrying out the provisions of this Code, to the end that its spirit and purpose may be achieved and the public aid programs administered efficiently throughout the State." (Ill. Rev. Stat. 1973, ch. 23, par. 12—13.)

The Department's regulation was entirely reasonable and consistent with the spirit and goals of the law. The Department's regulation in no way contravenes "family unity," nor does it exclude those needy individuals

with relatives willing to contribute to their support and maintenance from receiving public assistance. The regulation merely provides that in order to receive public assistance, those individuals must be placed in a State authorized facility rather than various private institutions of their own choosing. Furthermore, no issue of constitutional magnitude attaches to this case. The Department has always been, and remains willing to grant plaintiff public assistance if plaintiff will agree to be hospitalized in a State authorized facility which accepts the Department's payment as payment in full. The Department has at all times given to the plaintiff treatment equal to the treatment given to all other individuals who are members of his class. Constitutional equal protection does not require that everyone be treated alike, but only that individuals similarly situated be treated alike. (*Reed v. Reed* (1971), 404 U.S. 71, 30 L. Ed. 2d 225, 92 S. Ct. 251; *Tometz v. Board of Education* (1968), 39 Ill. 2d 593, 601, 237 N.E.2d 498.) The *Tometz* court held that "The legislature is not required to choose between legislating against all evils of the same genus or not legislating at all." By analogy, neither is the Illinois Department of Public Aid required to allow supplementation in the instant case because supplementation is sometimes allowed, under totally different circumstances, by the Illinois Department of Mental Health. In the instant case, it is the plaintiff who wishes to receive treatment disparate to other members of his class, that is, those individuals similarly situated who are eligible for public aid.

The majority appears not to recognize the undesirability of the practice that it will be condoning by its opinion and, therefore, has failed to reaffirm the reasonableness and the validity of the Illinois Department of Public Aid's "no supplementation" policy. The majority has improperly substituted its economic judgment for that of the Illinois Department of Public Aid in the Department's area of expertise. *Johnson's Professional Nursing Home v. Weinberger* (5th Cir. 1974), 490 F.2d 841, 844-45.