NORMA RELPH, Plaintiff-Appellant, *v.* THE BOARD OF EDUCATION OF DePUE UNIT SCHOOL DISTRICT NO. 103 OF BUREAU COUNTY, Defendant-Appellee.

Third District   No. 76-18

Opinion filed August 26, 1977.

STENGEL, J., dissenting.

Robert W. Deffenbaugh, of Springfield, for appellant.

Allen Schwartz, of Chicago, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This is an appeal from the order of the circuit court of Bureau County denying the petition of appellant, Norma Relph, for writ of mandamus against respondent-appellee, Board of Education of DePue Unit School District 103 of Bureau County, Illinois. The judgment was entered pursuant to respondent's motion for summary judgment.

In March 1973, petitioner was a tenured teacher employed by respondent as a full time home economics teacher. She received a notice of honorable dismissal from respondent notifying her she was being dismissed because her position was being eliminated. For the 1973-74 school year respondent employed two new nontenured teachers in positions for which petitioner claims she was qualified. Susan Cocking was hired as a reading teacher in the district's departmentalized grade structure. Louise Zillman was hired as a half-time librarian and half-time home economics teacher. Petitioner holds a certificate issued by the State Teacher Certification Board which is valid for teaching grades 6 through 12 inclusive.

Respondent initially filed an answer denying most of the substantive allegations of the petition, with the exception that the respondent admitted the honorable discharge of the petitioner in March of 1973. Such discharge was necessitated by a reduction in staff. The petition alleged the respondent had never afforded the petitioner the opportunity of

performing the services of the two nontenured teachers described above. Respondent's initial answer in paragraphs nine and ten generally denied petitioner's allegations but in its amended answer the respondent averred that positions for which petitioner was qualified had been offered to her but she had declined.

Petitioner initially filed a motion for summary judgment supported by her affidavit alleging and supporting the facts set forth in her petition. Included in support of her motion was a discovery deposition of Susan Bentz, Assistant Superintendent, Department of Professional Relations and Services, Illinois Office of Education, and Secretary of the Illinois State Teacher Certification Board. Respondent moved to oppose petitioner's motion for summary judgment and also moved for summary judgment in its behalf. The motions of respondent were supported by several exhibits including Circular Series A, Number 160, affidavits of the president of respondent board of education listing the teachers, their tenure status and assignments for the school years 1972-73 and 1973-74, an affidavit of Susan Bentz showing that based upon an examination of petitioner's transcripts and certificates and pursuant to Circular Series A, Number 160, as of June 1973, petitioner was only qualified to teach homemaking education and finally, an affidavit of the president of the board of education that during the petitioner's years of teaching she had not taught other subjects then being taught by the nontenured teachers. It was the major thrust of the respondent's motion that under the facts and circumstances petitioner had no rights under the teacher's tenure provisions which had been violated by the respondent.

Section 24—12 of the Illinois School Code reads in pertinent part as follows:

"If the removal or dismissal results from the decision of the board to decrease the number of teachers employed by the board or to discontinue some particular type of teaching service, written notice shall be given the teacher by registered mail at least 60 days before the end of the school term, together with a statement of honorable dismissal and the reason therefor, and in all such cases the board shall first remove or dismiss all teachers who have not entered upon contractual continued service before removing or dismissing any teacher who has entered upon contractual continued service and who is legally qualified to hold a position currently held by a teacher who has not entered upon contractual continued service. If the board within 1 calendar year thereafter increases the number of teachers or reinstates the positions so discontinued, the positions thereby becoming available shall be tendered to the teachers so removed or dismissed so far as they are

legally qualified to hold such positions." (Ill. Rev. Stat. 1973, ch. 122, par. 24—12.)

It is important to note a teacher who has entered upon contractual continued service (tenure status) has two separate job rights at two different times. In the year in which her dismissal occurs she is entitled to have the board of education remove or dismiss all teachers who have not attained tenure status and who hold positions for which she is legally qualified before she is removed or dismissed. During the calendar year following her dismissal she has a right to have tendered to her a position which becomes available if the board of education either increases the number of teachers or reinstates the position discontinued.

We are concerned only with that part of the statute relating to the rights of a tenured teacher during the calendar year following her dismissal. The two disputed passages of this statute with which we are concerned relate to the use of the term "legally qualified" and to the meaning of "if the board * * * increases the number of teachers." The questions raised on this appeal are ones of first impression and neither of the parties have been able to direct our attention to any Illinois authorities directly bearing on the issues.

■■ The trial court found that in the school year 1973-74 there was a reduction in the number of teachers. If the board of education increases the number of teachers, the positions becoming available must be tendered first to tenured teachers who were honorably dismissed or removed within one calendar year. (Ill. Rev. Stat. 1973, ch. 122, par. 24—12.) In the instant case respondent employed 30 teachers for the 1972-73 school year and 28 for the 1973-74 school year. At the end of the 1972-73 school year the number of teachers was reduced from 30 to 26, including the termination of petitioner's services. Two new nontenured teachers were added for the 1973-74 school year, thus accounting for the 28 teachers on the roster for that school year. Based on these figures, respondent argues and the trial court found, that there was no increase in the number of teachers for the 1973-74 school year. Accordingly, petitioner would not be entitled to be tendered either of these two positions given to new nontenured teachers. Although the total number of teachers in the district decreased from 30 to 28, there was an actual increase of two new teachers from the number of teachers employed at the end of the 1972-73 school year. The whole purpose of the tenure provisions of the School Code could easily be circumvented by interpreting section 24—12 as argued for by respondent. The purpose of these provisions is to protect those teachers who prior to their enactment served at the pleasure of the board of education. It was enacted to assure teachers of experience and ability a continuous service and rehiring based

upon merit rather than failure to be rehired for reasons that are political, partisan or capricious. (*Donahoo v. Board of Education*, 413 Ill. 422, 109 N.E.2d 787, and *Graham v. Board of Education*, 15 Ill. App. 3d 1092, 305 N.E.2d 310.) It would be a sham to hold the employment of two new teachers did not result in an increase in the number of teachers employed. That portion of the statute regarding an increase in the number of teachers is applicable here and governs the rights and obligations of the parties. We hold petitioner had the right under section 24—12 of the School Code to have tendered to her the two available jobs filled by new nontenured teachers. To hold otherwise would be to defeat the clear purpose of the tenure provisions of the School Code.

Respondent's motion for summary judgment, while initially urging there had been no increase in teaching staff, a position adopted by the trial court, also argued petitioner was not legally qualified as required by statute. In her motion for summary judgment the petitioner asserted she met all the legal qualifications specified by statute. On the other hand, the respondent insisted that petitioner's qualifications did not conform to Circular Series A, Number 160, and hence she was not qualified under the statute.

With respect to the provisions relating to the certification of teachers, section 21—1 of the School Code provides in pertinent part:

> "No one may be certified to teach or supervise in the public schools of this State who is not of good character, good health, a citizen of the United States and at least 19 years of age * * *." (Ill. Rev. Stat. 1973, ch. 122, par. 21—1.)

No contention is made here that the petitioner does not meet these requirements. Section 21—5 of the School Code reads:

> "A high school certificate shall be valid for 4 years for teaching in grades 6 to 12 inclusive of the common schools. It shall be issued to persons who have graduated from a recognized institution of higher learning with a bachelor's degree and with not fewer than 120 semester hours including 16 semester hours in professional education, 5 of which shall be in student teaching under competent and close supervision and with one or more teaching fields. The academic and professional courses offered as a basis for the high school certificate shall be approved by the Superintendent of Public Instruction in consultation with the State Teacher Certification Board." (Ill. Rev. Stat. 1973, ch. 122, par. 21—5.)

Plaintiff here was issued a certificate which qualified her to teach grades 6 thru 12 inclusive.

Although the trial court, as heretofore observed, held that there had been no increase in staff entitling petitioner to a preference in the positions before nontenured teachers were employed, the trial court also

found in its order granting respondent's motion for summary judgment that petitioner was not legally qualified to fill the newly created positions of half-time home economics teacher and half-time librarian created for the 1973-74 school year. At this juncture we are compelled to point out that no mention was made in the trial court's order regarding the newly created position of departmentalized reading teacher. The sections of the statute pertaining to a tenured teacher's rights require she be legally qualified. The requirements of the statute pertaining to legal qualifications are met by petitioner in the instant case and indeed, the trial court makes no contrary holding.

Instead of referring to or relying on the statutory provisions regarding qualifications, *i.e.*, certification of teachers, the respondent argued that Circular Series A, Number 160, established qualifications for teachers. Since the petitioner did not meet the qualifications specified in the circular, respondent argues she was not legally qualified under the statutory tenure provisions.

We note so far as the documents supporting the respondent's motion for summary judgment are concerned, we are unable to find any indication the respondent board was aware of the provisions of Circular Series A, Number 160, prior to the commencement of this action, that it had ever applied the guidelines therein to either existing teachers or newly employed teachers, or in fact that the board had found petitioner to be unqualified pursuant to the guidelines.

■■ The deposition of Susan Bentz, Assistant Superintendent, Department of Professional Relations and Services, Illinois Office of Education, and Secretary of the Illinois State Teacher Certification Board, discusses at length the nature and significance of the provisions of Circular Series A, Number 160. The provisions therein deal generally with subject matter qualifications for various areas of teaching. In fact, an examination of the circular indicates it does not specify any requirements for a teacher in the sole position of departmentalized reading teacher. The provisions are recommendations or advisory only, and concededly are not binding on any school district. According to the deposition, there is no uniformity concerning the effect of these provisions and they are apparently followed by some districts and not by others. Without deciding whether there is statutory authority for the provisions of the circular or for giving such provisions any particular legal effect, it is our conclusion the provisions do not establish the legal qualifications required by the School Code. Not only are the provisions of the circular merely advisory, but by their own terms teachers were not required to meet the requirements therein upon initial appointment but were given a period of up to five years to obtain the additional subject matter qualifications.

For the foregoing reasons the judgment of the circuit court of Bureau

County is reversed and remanded with directions to enter judgment in favor of the petitioner consistent with the views expressed herein.

Reversed and remanded with directions.

SCOTT, J., concurs.

Mr. JUSTICE STENGEL, dissenting:

I must respectfully dissent from the opinion of my distinguished colleagues.

I agree with the majority view that, under the facts of this case, petitioner would be entitled to one of the two new positions if she were qualified. I do not agree, however, that the board must consider her legally qualified solely because she holds a high school teaching certificate, regardless of whether she meets the recommended State standards for the particular positions she seeks. I do not believe the legislature intended such a narrow view of the term "qualification."

To illustrate, section 27—1 of the School Code provides:

> "Every school established under this Act shall be for instruction in the branches of education prescribed in the qualifications for teachers and in such other branches, including vocal music and drawing, as the school board or the voters of the district at the annual election of the school board members may prescribe."

Although section 27—1 refers to "the branches of education prescribed in the qualifications for teachers," the sections setting out the statutory qualifications for teachers do not prescribe any branches of education other than "professional education." (See Ill. Rev. Stat. 1975, ch. 122, par. 21—1 *et seq.*) However, the Superintendent of Public Instruction is authorized by statute to approve the academic and professional courses offered as a basis for a teaching certificate (see, *e.g.*, Ill. Rev. Stat. 1975, ch. 122, par. 21—5), and has done so in "Rules and Regulations to Govern Certification of Teachers." Rule 3.01 sets out in detail the general and professional education courses required to obtain a high school certificate and also the requisite number of hours for major and minor fields of study. Thus, the word "qualifications" as used in section 27—1 was of necessity intended to include requirements set by the State Superintendent, and I believe section 24—12 should be given a similar interpretation.

A regulation titled "Circular Series A, No. 160," issued by the State Superintendent of Public Instruction, sets out educational requirements for teaching particular subjects at the secondary level and in departmentalized 6th, 7th and 8th grades. These standards specify substantial training in the subject matter being taught. According to

deposition testimony of Susan Bentz, an official in the Illinois Office of Education, school districts are held accountable for these standards when they are evaluated for purposes of recognition.

Section 2—3.25 of The School Code imposes upon the Superintendent of Public Instruction the following duties:

> "To determine for all types of school conducted under this Act efficient and adequate standards for physical plant, * * * instruction and teaching, curriculum, library, * * * and to grant certificates of recognition to schools meeting such standards * * *."

Under section 5—32 of the Code, a school district which fails to maintain a recognized public school for one year shall automatically be dissolved. The record in this case indicates that the standards for high school teacher qualifications are applied by the State in a somewhat flexible manner, subject to the professional judgment of those performing evaluations of each school. However, the importance of receiving State recognition is a concern of every school board, and to reject the qualifications stated in Circular Series A, No. 160, would ignore the importance of meeting State recognition standards.

Petitioner admitted in the trial court that, under the theory later adopted in the majority opinion, she could legally insist upon employment as a teacher of band, speech, or any other subject, regardless of her training. Then the Board would have no recourse except to initiate proceedings under section 24—12 to discharge her for incompetency after the new school year had begun. (See Ill. Rev. Stat. 1975, ch. 122, par. 10—22.4.) Under this theory, the students of the school district would be the ultimate losers.

Of course, a school board should not be permitted to defeat the purpose of the tenure statute by a whimsical or capricious rearrangement of teaching assignments. Here, however, petitioner does not claim that the new positions were created arbitrarily or in bad faith. Consequently, on the basis of the record before us, I cannot say that the trial court erred in holding that petitioner failed to demonstrate a clear and undoubted right to the two positions denied her. I would affirm.