KENNETH L. LENARD, Petitioner-Appellee, *v.* BOARD OF EDUCATION OF FAIRFIELD SCHOOL DISTRICT NO. 112 OF WAYNE COUNTY, Respondent-Appellant.

Fifth District   No. 77-48

Opinion filed January 31, 1978.

854

William E. Hoffee, of Fairfield, for appellant.

Drach, Terrell and Deffenbaugh, P. C., of Springfield, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This is an appeal by the respondent, Board of Education of Fairfield School District No. 112 (Board), from an order of the circuit court of Wayne County granting Kenneth L. Lenard's petition for a writ of mandamus and restoring him to his teaching position for the 1974-1975 school year.

Petitioner Lenard taught in Wayne County schools for eight years, commencing with the 1966-1967 school year, and had acquired tenure, referred to in the School Code as "contractual continued service" (Ill. Rev. Stat. 1973, ch. 122, par. 24—11). In March of the school year 1973-1974, he received a letter from the president of the respondent Board, stating that he would be honorably dismissed at the end of the school year because the number of teachers in the district was being reduced. In April 1974 petitioner filed a petition for a writ of mandamus seeking his reinstatement, alleging that a nontenured teacher had been retained in preference to him contrary to the provisions of section 24—12 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12). The trial court entered an order dismissing his petition on the grounds that the question

was reviewable only by a proceeding under the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*).

On appeal of the dismissal, this court held that mandamus was an appropriate remedy and remanded the cause for further proceedings *Lenard v. Board of Education* (1975), 26 Ill. App. 3d 188, 324 N.E.2d 657.

Prior to trial of this matter, the Board made a motion to dismiss, asserting the mootness of the relief sought. The motion was denied and the cause proceeded to trial, resulting in the instant order for reinstatement of petitioner. The Board's post-trial motion preserving the substantive issues developed at trial as well as the mootness allegation was denied, and the Board brought this appeal.

The issues presented for review revolve around the meaning of the phrase "legally qualified" in section 24—12 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12), and especially the effect, if any, of a regulation of the Office of the Superintendent of Public Instruction (now the State Board of Education) referred to as Circular Series A, Number 160, upon the above provision and teacher certification.

The basic issues are: (1) was Kenneth Lenard legally qualified within the meaning of section 24—12 of the Code to hold the teaching position of nontenured teacher Richard Carter; (2) is legal qualification to hold a departmentalized teaching position controlled by minimum educational requirements set forth in the regulation, Circular Series A, Number 160; (3) is the regulation a valid regulation of the Office of the Superintendent of Public Instruction which is binding upon the public schools of the State; (4) is the regulation invalid either because it nullifies teacher certification or is arbitrary and discriminatory; and (5) is mandamus available when the school term for which reinstatement is sought has expired.

■■ Section 24—12 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12), dealing with removal or dismissal of tenured teachers, provided at all relevant times as follows:

"* * * If the removal or dismissal results from the decision of the board to decrease the number of teachers employed by the board or to discontinue some particular type of teaching service, written notice shall be given the teacher by registered mail at least 60 days before the end of the school term, together with a statement of honorable dismissal and the reason therefor, and *in all such cases the board shall first remove or dismiss all teachers who have not entered upon contractual continued service before such board shall remove or dismiss any teacher who has entered upon contractual continued service and who is legally qualified to hold a position currently held by a teacher who has not entered upon contractual continued service;* * * *." (Emphasis added.)

The record reveals that petitioner Lenard asserts that under section 24—12 a tenured teacher is legally qualified to hold the position of a nontenured instructor in a partially departmentalized upper elementary grade (6th, 7th or 8th) when he possesses a teaching certificate that covers the grade in which the nontenured teacher is instructing; whereas, the Board maintains one must not only be duly certificated but also meet the semester hour requirements for each subject taught on a departmentalized basis as set out in the regulation, Circular Series A, Number 160, in order to be legally qualified to hold such position.

Throughout the time petitioner Lenard was employed by the Board he primarily taught geography to seventh-grade pupils. He held a certificate issued by the State Teacher Certification Board for teaching grades six through 12 inclusive. According to the testimony of Edward Wiser, Superintendent of Fairfield School District Number 112, Mr. Lenard's position was eliminated because of decreasing enrollment.

At the time the decision was made to dismiss Lenard, two nontenured teachers were employed by the Board, namely, Charlene Schmerbauch and Richard Carter. Ms. Schmerbauch taught physical education to seventh and eighth grade girls. Lenard did not allege any right to her position; his pleadings were directed entirely towards the teaching position of Richard Carter, who did not enter upon contractual continued service until the close of the 1973-1974 school term.

Richard Carter taught a sixth-grade class during the 1973-1974 school year. His assignment remained the same in the following term. Superintendent Wiser testified that Mr. Carter taught in a partially departmentalized situation and that music, mathematics and physical education were taught to the sixth grade in a departmentalized fashion. He identified departmentalized teaching as being:

"* * * a situation where students would pass to another teacher for specialized instruction at that grade level by any teacher. * * * In other words, they would not be in a self-contained classroom all day. Any deviation from a self-contained classroom in grades 6 through 12 is departmentalized."

Board witness, Richard N. Small, Assistant Superintendent for the Department of Recognition and Supervision in the Illinois Office of Education, defined departmentalization by reading from respondent's exhibit 5, a form letter from the witness to local superintendents of schools. It states: "Departmentalization is considered as any variation from a 'homeroom' or 'self contained' type of instructional pattern. Variations could range from total departmentalization to a single class period per day outside of a self contained room." The letter went on to state that, "In all assignments outside of the self-contained room, the eighteen semester hour standard would apply." This reference is to the

educational requirement of Circular Series A, Number 160, which the Board argues supports its finding that Lenard was not "legally qualified" to hold Carter's job.

Petitioner Lenard testified on direct examination that Mr. Carter taught a sixth grade class in a self-contained classroom instructional pattern. He was later called by the Board as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60) and restated his belief that Carter's class was self contained; however, he testified that he knew that the students went out for physical education and music while disavowing any knowledge that they passed classes for mathematics instruction.

Whether mathematics was departmentalized is important since Edward Wiser testified that the Board, applying the standards of regulation A-160, found Lenard unqualified since he had only eight quarter hours (approximately five semester hours) of math in college as opposed to the 18 semester hours required by the regulation if math is taught as a departmentalized subject. He further testified that the regulation was applied to all staff members.

From the testimony of Edward Wiser, offered in rebuttal for petitioner, it appears that there were four sixth-grade classes and four teachers. Richard Carter taught his sixth grade "homeroom" class language arts (reading, writing and spelling), science and social studies. All four teachers, including Carter, taught math; however, they did not teach this subject to precisely the same group of students that comprised their homeroom section. A portion of the students in each homeroom section went to one of the other teachers for specialized math instruction based on their individual needs or abilities.

We believe the following portions of the 1973 version of the Circular Series A, Number 160 regulation (The Illinois Program for Evaluation, Supervision and Recognition of Schools) of the Office of the Superintendent of Public Instruction are relevant to this case.

"Statement of Philosophy

* * * *Standards* [for State recognition] *are to be considered as points of departure* in the continuing search for means of improving education.

* * *

Chapter 2 Recognition and Supervision

2—1 The Office of the Superintendent of Public Instruction is charged with *evaluating schools on the basis of minimum standards.*

* * *

2—5.1 Full Recognition is granted to a school district or attendance center which has undergone an onsite evaluation by the Office of

the Superintendent of Public Instruction that it: 1. *meets the basic fundamental standards required in all elementary and secondary schools* ❋ ❋ ❋.

❋ ❋ ❋

Chapter 6 The Instructional Program

❋ ❋ ❋

6—2.7 The Instructors *shall* meet the semester hour *requirements* for the areas of their teaching assignment as outlined in Chapter 9, Section 5 of this document.

❋ ❋ ❋

Chapter 9 Standards Governing Preparation of Professional Personnel

❋ ❋ ❋

9—5 Standards for Secondary Teachers

The quality of instruction depends upon many factors; however, *a teacher should have substantial college or university training in the field directly related to the subject matter that is being taught.*

❋ ❋ ❋

*Recommendations* for educational requirements for subjects taught on the secondary level may be found on the following pages.

❋ ❋ ❋

X. JUNIOR HIGH or *Departmentalized Upper Elementary Grades 18 semester hours in each field,* including at least 5 in each course where subject matter areas are divided into two or more specific courses. *This requirement applies to teachers of the 6th, 7th and/or 8th grade where the organizational pattern is a junior high or the instructional pattern is in part or entirely departmentalized. When departmentalized in part, the requirement only applies to the departmentalized teachers."* (Emphasis added.)

Richard Small testified that as head of the Department of Recognition and Supervision he chaired the committee which drafted the 1973 regulation and personally assisted in the editing and rewriting of the document. The document was filed in Springfield in April of 1973 as a regulation of the State office and was meant to be applied beginning with the 1973-1974 school year. It was intended to set forth the minimum standards that must be met by public elementary and secondary schools in Illinois in order to entitle a district or school to file a claim upon the common school fund.

He further testified that the regulation does not directly affect teaching certificates but rather acts as a restriction upon how school districts may assign legally certificated teachers. Although section 9—5 of the

regulation contains the word "recommendations," the educational training standards are considered to be mandatory. The command of section 6—2.7 is deemed controlling. According to Mr. Small, the State office could deny recognition to a district or put it on probationary status for utilizing a teacher in a position involving departmentalized instruction in a field in which the instructor did not meet the preparatory educational requirements of the regulation. He was, in fact, aware that the State had denied recognition to a school in Mills Prairie for violating regulation A-160 but could not say if a violation as to teacher qualifications was involved. Mr. Small stated that under the regulation a teacher would have to have 18 semester hours in mathematics to teach it in a partially departmentalized upper elementary grade.

Mr. Wiser testified that he understood the regulation to be a mandate which the school district was required to follow. Under the provisions of the regulation he determined in deciding on the staff for the 1974-1975 term that Mr. Lenard because of his math background was unqualified to hold Mr. Carter's position.

The transcript of Mr. Lenard's college work, admitted as an exhibit by the Board, confirms the trial testimony that he earned only eight *quarter* hours in math. These credits came from two courses taken in his freshman year, General Math I and Elementary Statistics, for which he earned four hours of D and four hours of C, respectively. Mr. Carter's college transcript was not made a part of the record. The only evidence of his qualifications in math was supplied by Superintendent Wiser's testimony that he believed Carter had 18 semester hours of math.

While testifying under section 60 (Ill. Rev. Stat. 1973, ch. 110, par. 60), Mr. Lenard responded that he would be qualified to teach departmentalized courses in history, geography, economics and sociology. He also agreed that although he held a grades six through 12 certificate, there are some teaching positions that are departmentalized for which he would require additional training. It was Mr. Lenard's position that given the book and the time to prepare for it, he could teach a sixth-grade math class.

Initially, we must decide whether Mr. Carter's teaching assignment in math was departmentalized. Testimony at trial and the regulation itself clearly indicate that the semester hour requirement of section 9—5X of the regulation applies only if the teacher is teaching the subject in a departmentalized, as opposed to self-contained, situation. Accordingly, if math was not departmentalized, Mr. Lenard would appear to be *legally* qualified for the sixth grade position based on his certificate, regardless of his math training, since no other explicit requirements exist.

■■ There can be no doubt that the sixth grade in the school district was partially departmentalized. Mr. Lenard admitted that students

passed from their homerooms for physical education and music. Although the manner in which Carter and the other teachers taught mathematics was not exactly congruent with that employed in the ordinary departmentalized situation, we believe mathematics was nonetheless a departmentalized subject. Departmentalization is *any* variation from a "homeroom" type of instructional pattern. The evidence shows that Carter did not merely instruct his homeroom students in math as he did in other subjects such as reading, spelling, science and history. Part of his homeroom students passed to other instructors and pupils from the other classes similar in abilities in math as to his remaining homeroom students came to him for specialized instruction. This is essentially a departmentalized approach. Consequently, if the regulation validly established specialized standards for teacher preparation, it must apply to the position occupied by Richard Carter.

There is no dispute concerning the procedure employed by the Office of the Superintendent of Public Instruction in enacting this regulation. The evidence supports a conclusion that the proper steps were taken to register regulation A-160 (The Illinois Program for Evaluation, Supervision, and Recognition of Schools) as a regulation of that office. However, the authority of the State Superintendent to enact through the recognition regulation educational requirements for teaching assignments beyond those needed for certification was and is disputed.

In its order reinstating the petitioner, the court appears to agree with Lenard that no such authority exists and that "legal qualification" for purposes of section 24—12 of the Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12) means certification. The order reads in pertinent part:

> "The Court is of the opinion that if following regulation A-160 constitutes a defense, then regulation A-160 constitutes a modification, if not a repeal, of certification as provided by the statute.
>
> The statute provides that an elementary certificate is valid for four years of teaching in the kindergarten and lower nine grades of common schools. Petitioner held this certificate.[1] Following A-160 in this cause would make certification depend upon the subject or subjects to be taught in a departmentalized school and upon what subjects the teacher had studied and to what extent they had been studied.
>
> The legislature has made no such provision.
>
> The purpose of A-160 is certainly valid, but in this case following A-160 would result in the nullification of certification."

[1] This finding is in error. Petitioner held a high school certificate for grades 6-12 (Ill. Rev. Stat. 1973, ch. 122, par. 21—5). The regulation sets no specialized training standards for teaching subjects in elementary grades except section 9—5X as to departmentalized subjects in 6th, 7th and 8th grades.

*Relph v. Board of Education* (3d Dist. 1977), 51 Ill. App. 3d 1036, 366 N.E.2d 1125, is the only reported case in which the meaning of the term, "legally qualified," in section 24—12 of the Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12) and this regulation's purported requirements have been addressed by a reviewing court. The decision of the court in *Relph* was not unanimous. Mr. Justice Stengel dissented from the majority opinion.

The *Relph* court was required to decide if the respondent school board had violated with respect to petitioner a different provision of section 24—12 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12) than is considered here that requires a board to tender any positions for which a dismissed tenured teacher is legally qualified to hold to him first if it increases the number of teachers or reinstates the discontinued position within one calendar year of the tenured teacher's dismissal.

In *Relph* the petitioner, a home economics teacher, and three other teachers were honorably dismissed at the end of the 1972-1973 school year; the board was eliminating petitioner's position. For the 1973-1974 school year the board employed two new nontenured teachers in positions for which petitioner claimed she was qualified, one as a reading teacher and another as a half-time librarian and half-time home economics teacher. Neither position was tendered to petitioner, and the petitioner commenced suit for writ of mandamus. The board's motion for summary judgment was granted by the trial court on the ground that there was no increase in the number of teachers for the 1973-1974 school year.

The appellate court reversed the judgment and remanded the cause with directions to enter judgment in favor of petitioner.

In reaching this decision the court decided two questions: (1) was there an increase in the number of teachers within the meaning of section 24—12; and (2) was the petitioner "legally qualified" to hold the new positions. Relative to issue one the court found that to hold that the employment of two new teachers did not result in an increase in the number of teachers, despite the decrease in the absolute number of teachers, would defeat the clear purpose of the tenure provisions of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—11 *et seq.*).

With respect to legal qualification, the petitioner argued that she was "legally qualified" since she was certified to teach grades 6-12, and the board argued that she was not qualified since her qualifications did not conform to Circular Series A, Number 160. Without deciding whether there was statutory authority for the provisions of the circular or for giving such provisions any particular legal effect, the majority concluded that its provisions did not establish the legal qualifications required by the School Code, that the only legal requirements were those in sections 21— 1 and 21—5 of the Code (Ill. Rev. Stat. 1973, ch. 122, pars. 21—1 and 21—

5) (*i.e.*, good character, good health, citizenship, 19 years of age and certification).

We disagree.

First, we decide the question that the *Relph* court reserved: whether there is statutory authority for the provisions of the regulation establishing educational requirements for the areas of one's teaching assignment.

It is fundamental law that administrative agencies possess only such authority as is legally conferred by express provisions of law or such as, by fair implication and intendment, is incident to and included in the authority expressly conferred for the purpose of carrying out and accomplishing the objective for which the agencies were created. *Fahey v. Cook County Police Department Merit Board* (1974), 21 Ill. App. 3d 579, 315 N.E.2d 573.

The Board directs our attention to the following constitutional and statutory provisions for evidence of the authority for the instant standards: Ill. Const. 1970, art. X, §§1, 2; Ill. Rev. Stat. 1973, ch. 122, pars. 2—3.3, 2—3.6, 2—3.25. These provisions evidence a broad delegation of power to the State Board of Education and the Superintendent of Public Instruction (old title). One of the broadest delegations of power involves the power of the Superintendent to set standards for recognition of schools, qualifying them for State funding.

■■■ Section 2—3.25 of the Code (Ill. Rev. Stat. 1973, ch. 122, par. 2—3.25) provides in pertinent part that the Superintendent shall have the power and duty "[t]o determine for all types of schools conducted under this Act efficient and adequate standards for * * * instruction and teaching, * * * and to grant certificates of recognition to schools meeting such standards." Section 18—8 provides in turn that, "A 'recognized school' means any public school which meets the standards as established for recognition by the Superintendent of Public Instruction." We find that by fair implication and intendment the Office of the Superintendent of Public Instruction had the authority to enact the challenged standards pursuant to section 2—3.25. Moreover, we find that the educational standards are mandatory as to teachers of departmentalized subjects in upper elementary grades. Section 6—2.7 of the regulation states that instructors must meet the semester hour *requirements* for the areas of their teaching assignment that are set out in chapter 9, section 5 (9—5). This command is not countermanded by the use of the word "recommendations" in section 9—5. That language merely implies that boards are free to set higher standards. This is consistent with the message in the Statement of Philosophy that, "Standards are to be considered as points of departure * * *."

■■ Second, if the legislature had meant to limit boards' discretion as to who they can employ by requiring them to show preference to

"certificated" teachers on tenure over probationary teachers when eliminating the tenured teacher's job it could have clearly indicated such by using the term "certificated." It chose to use the broader term "legally qualified." We should keep in mind that the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—11 *et seq.*) created a liability where none would otherwise exist and must, therefore, be strictly construed. (*Illinois Education Association Local Community High School District 218 v. Board of Education* (1975), 62 Ill. 2d 127, 340 N.E.2d 7; *Anderson v. Board of Education* (1945), 390 Ill. 412, 61 N.E.2d 562.) Strict construction here requires us to hold that legal qualification under section 24—12 requires satisfaction of all educational requirements to teach in a position, including those in regulation A-160.

We agree with the reasoning and remarks of Mr. Justice Stengel in his dissent in *Relph* (51 Ill. App. 3d 1036, 1042-43, 366 N.E.2d 1125, 1129-30). Petitioner here testified that he was qualified to teach departmentalized courses in subjects all in the area of social studies and admitted there are some teaching positions that are departmentalized for which he would require additional training. Yet, under the theory upon which he prevailed at trial, he could legally insist upon employment as a teacher of foreign languages, physical education, math or any other subject regardless of his training and the Board would be compelled to discharge the probationary teacher presently holding the position whom it has already determined to be particularly qualified. Then the Board would have no recourse except to initiate proceedings under section 24—12 to discharge him for incompetency after the new school year has begun. (See Ill. Rev. Stat. 1973, ch. 122, par. 10—22.4.) Under this theory, the students of the school district would be the ultimate losers. This could not be the legislature's intent.

Departmentalized teaching in secondary grades has long been the rule rather than the exception. Although certificates are issues which pertain to certain grades, teachers obviously prepare themselves for teaching by studying intensely in a few fields. They expect to be hired to teach in those areas of special competence. Petitioner concentrated his study in social studies and did teach in his special area of competence during his employment by the Board. It seems to us to be unrealistic and unwarranted to interpret the instant provision of the tenure act to protect the employment of such a specialized teacher by giving him preferential rights to positions involving departmentalized instruction in subjects outside his major areas of study.

Interpreting legal qualifications for purposes of section 24—12 to include the standards of Chapter 9 of Circular Series A, Number 160 in addition to certification does not denigrate or nullify certification. It merely reflects the accomplished fact of departmentalization and

specialized training of teachers in secondary schools which we have noted above. We agree with Edward Wiser's assessment that the standards act only as a restriction on how school boards may assign duly certificated teachers. Such a search for the right teacher for the right position would occur even absent this regulation.

Petitioner Lenard contends that even if the Illinois Office of Education has the authority to set standards for teachers, the regulation's standards which apply to departmentalized upper elementary grade teachers are unenforceable because they are unreasonable, arbitrary and discriminatory.

In arguing in support of the contention on unreasonableness, the petitioner directs our attention to evidence at trial concerning the problems the State office has had in administering the standards, namely: (1) the issuance of 225 temporary approved certificates in the 1974-1975 term to teachers not meeting the requirements; (2) the possibility that some districts may be completely ignoring the standards; and (3) the subsequent revision of the regulation to allow a grace period of five years to some junior high school teachers in which to meet the standards. Neither the fact that there are difficulties in enforcing the standards nor that some schools may risk their State funding by wilfully ignoring the standards, compels us to find the standards to be unreasonable. We shall not do so. Such problems doubtlessly exist with respect to many of the statutes and regulations currently in force in Illinois.

Petitioner's argument with respect to the arbitrariness and discriminatory effect of the standards centers on the fact that they apply only to departmentalized teachers and not to instructors in self-contained classroom situations.

■■ Whether an act is open to the charge that it denied equal protection of the law depends not on whether the parties effected have been discriminated against but whether there is a reasonable basis for the classification of the statute. (*Lawrie v. Department of Public Aid* (1977), 46 Ill. App. 3d 23, 360 N.E.2d 527.) A statute will not be construed as denying equal protection of the law unless the classifications complained of are arbitrary and not based upon a rational difference of condition or situation in relation to the legislative purpose. (*Hill v. Jackson Park Hospital* (1976), 39 Ill. App. 3d 223, 349 N.E.2d 541; *Edelen v. Hogsett* (1969), 44 Ill. 2d 215, 254 N.E.2d 435.) We believe there is ample reason for treating teachers in self-contained classrooms and those teaching departmentalized subjects differently. When specialized instruction is offered, requiring the instructior to possess a minimum amount of specialized training in the particular field is eminently reasonable in order to further the goals of quality education.

■■ Applying the regulation to the instant case it is obvious that Mr.

Lenard was not "legally qualified" to hold Mr. Carter's position. Since Mr. Carter's position included teaching mathematics in a departmentalized situation, the instructor was required to have 18 semester hours college training in mathematics. Mr. Lenard's record demonstrates that he had only eight quarter hours or approximately five semester hours and was thus not properly qualified for the instruction of math.

Since we find that the Board was correct in its determination that Mr. Lenard was not legally qualified under section 24—12 (Ill. Rev. Stat. 1973, ch. 122, par. 24—12) to hold Mr. Carter's position, we need not decide whether mandamus was available to reinstate petitioner for school terms that had expired.

For the foregoing reasons, the judgment of the circuit court of Wayne County is reversed and this cause is remanded with directions to enter an order consistent with this opinion, denying the petition for writ of mandamus.

Reversed and remanded with directions.

KARNS and CARTER, JJ., concur.