ROBERT B. HAGOPIAN et al., Petitioners-Appellants, v. BOARD OF EDUCATION OF TAMPICO COMMUNITY UNIT SCHOOL DISTRICT NO. 4, Respondent-Appellee.

Third District   No. 79-189

Opinion filed April 28, 1980.—Rehearing denied June 6, 1980.

STENGEL, J., dissenting.

R. W. Deffenbaugh, of Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellants.

Allen D. Schwartz and Bennet Rodick, both of Robbins, Schwartz, Nicholas & Lifton, Ltd., of Chicago, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Mary E. Foley, a school teacher, was on March 26, 1976, given notice that her services with the Tampico School District were to be terminated at the end of the 1975-1976 school term. Subsequently Foley commenced a *mandamus* action in the circuit court of Whiteside County in which she sought to be assigned as full-time teacher in the Tampico district for the school year 1976-1977 and that she further be awarded damages in the amount of salary loss incurred by Tampico's action. Judgment was entered on December 3, 1976, by the circuit court of Whiteside County denying Foley's prayer for a writ of *mandamus* and dismissing her case with prejudice. An appeal to this court was perfected by Foley (such appeal hereinafter designated *Foley I*) and on January 23, 1978, the judgment of the trial court was reversed as to Foley and it was ordered that a writ of *mandamus* should issue. (*Hagopian v. Board of Education* (1978), 56 Ill. App. 3d 940, 372 N.E.2d 990.) The record discloses that a writ of *mandamus* was never issued. Tampico reemployed Foley shortly after our supreme court denied Tampico leave to appeal from the *Foley I* decision. Subsequently a writ of *mandamus* was presented to the trial court which contained directions for the payment of damages and costs to Foley but the trial court refused to approve of the same.

On November 17, 1978, Foley had filed a motion in the original proceedings which she had instituted in the circuit court, which prayed for award of damages (being loss of income suffered) and costs. The trial court refused to conduct a hearing on the motion and predicated its refusal on the grounds that the mandate issued by the court ordered only that Foley be reemployed and that it contained no directions in regard to damages. The trial court entered an order denying Foley's motion for an award of damages and this appeal ensued.

In this appeal the Board of Education calls attention to a recent

supreme court decision which holds that a teacher's "legal qualification" is not determined solely by the teaching certificate but in addition standards promulgated by the Illinois Office of Education are to be considered. The case referred to is *Lenard v. Board of Education* (1979), 74 Ill. 2d 260, 384 N.E.2d 1321. It is Tampico's contention that in light of the *Lenard* decision this court's reasoning was erroneous in arriving at the decision set forth in *Hagopian v. Board of Education* (1978), 56 Ill. App. 3d 940, 372 N.E.2d 990, and consequently Foley is not entitled to reinstatement or damages. We agree that the *Lenard* decision establishes additional standards which must be considered in determining the "legal qualifications" of a teacher; however, we do not agree that the decision affects the status of Foley. The underlying and basic issue which was the "legal qualifications" of Foley was determined by this court's opinion dated January 23, 1978 (rehearing denied March 6, 1976). Leave to appeal from this decision (*Hagopian v. Board of Education*) was denied by our supreme court on September 23, 1978, and mandate certifying the denial for leave was issued on October 20, 1978. Foley was reemployed by Tampico and resumed her teaching duties on November 13, 1978. The decision in *Lenard* was not forthcoming until sometime after the qualifications of Foley had been completely litigated and she had resumed her employment. It is our considered opinion that the trial court incorrectly held that our mandate contained no directions in regard to damages. Further, it is our opinion that the doctrine of *res judicata* prevents, because of changes in the law wrought by the *Lenard* decision, any renewed consideration of the issue of damages.

Regarding the effect of the *Lenard* decision on the award of damages to appellant Foley, our attention has been directed to the precedent set by *Zerulla v. Supreme Lodge* (1906), 223 Ill. 518, 79 N.E. 160. It is argued that according to *Zerulla*, where the supreme court in a separate matter alters the pertinent law in the period between appeals, the appellate court on the second appeal may not follow its contrary prior judgment and must apply the law as clarified by the Illinois supreme Court. While generally *Zerulla* stands for this proposition, a closer reading reveals a qualification affecting cases where the appellate court's first decision exhibited the necessary finality. The qualification turns on the distinction between the legal doctrines of *res judicata* and of the *law of the case*.

The general rule laid down by *Zerulla* is set forth by Justice Farmer as follows:

> "[W]hile the determination of a question of law by the Appellate Court on the first appeal may, as a general rule, be binding upon it on the second appeal, it certainly cannot be binding on this court. Nor would the Appellate Court on the second appeal, we apprehend, be obliged to adhere to a proposition of law laid down

on the first appeal, when this court had, since the first appeal, decided the precise question contrary to the rule announced by the Appellate Court. To so hold would lead to most illogical results." (*Zerulla v. Supreme Lodge* (1906), 223 Ill. 518, 520, 79 N.E. 160, 161.)

However, this general rule is qualified by a prefatory portion of the *Zerulla* opinion which describes the nature of the determination made on the "first appeal." The nature of the mandate on the "first appeal" determines whether the issues are once and for all finally determined, *i.e.*, *res judicata*. Before reaching the conclusion set forth in the passage previously quoted, the supreme court recited this factual background:

> "The judgment and order of the Appellate Court reversing and remanding the case was general in its terms and contained no directions to the trial court. It was neither final nor conclusive between the parties, no appeal could have been prosecuted from it, and it was, therefore, not *res judicata*. [Citations.]" 223 Ill. 518, 519-20, 79 N.E. 160, 161.)

The unpublished negative implication is that where the appellate court mandate is final and conclusive, the result is *res judicata*.

Such a negative implication was apparently gleaned by at least one appellate court. Justice Gridley of the First District observed:

> "In *Zerulla v. Supreme Lodge*, 223 Ill. 518, it was decided that a proposition of law laid down by an Appellate Court of Illinois, upon reversing a judgment *generally* and remanding the cause, is not binding upon that court upon a second appeal, where the Supreme Court has since the first appeal decided the point involved contrary to the proposition laid down." (*Awotin v. Atlas Exchange National Bank* (1934), 275 Ill. App. 530, 547.)

We believe it noteworthy that the emphasis on the word "generally" added by Justice Gridley is not present in the original *Zerulla* opinion of Justice Farmer.

The difference between the "general" remand and the remand with directions to the trial court is the difference between establishing the law of the case and establishing conclusively by final judgment the issue before the court. The former, the law of the case, is subject to change according to the rule set forth in *Zerulla*. The latter issues are outside the rule of *Zerulla* and are *res judicata*. "The doctrine of res judicata is based on requirements of justice and public policy and reflects a public policy that requires an end to litigation after each party has had a full opportunity to present all pertinent facts." (23A Ill. L. & Prac. *Judgments* §281 (1979).) In other words, at some point legal disputes must cease without opportunity for revival upon subsequent changes in the law.

■■ To determine whether the case at bar is appropriate for application

of the doctrine of *res judicata*, two inquiries are necessary. One, was the appellate court decision in *Foley I* "general in its terms" or did it contain "directions to the trial court"? Two, was the decision final and conclusive? With regard to the first inquiry, this court held that:

> "For the reasons stated, the judgment of the circuit court of Whiteside County is * * * reversed as to the plaintiff-appellant Foley. The writ of *mandamus* as to the plaintiff-appellant Foley should issue, and this individual should be reinstated as a tenured teacher with the defendant-appellee Board of Education of Tampico Community Unit School District No. 4." (*Hagopian v. Board of Education* (1978), 56 Ill. App. 3d 940, 949, 372 N.E.2d 990, 997.)

Not only is there no general remand, there is no remand whatever, with directions or otherwise. The order of the appellate court is two-fold: issue the writ of *mandamus* and reinstate the plaintiff. What performance should the writ compel? We believe it is patent from the circumstances that the writ should compel the performance prayed for in Foley's complaint.

It goes without saying that the writ of *mandamus* must compel some performance. Our prior opinion says that "[t]he writ of mandamus * * * should issue," and just as acts of the legislature should be construed so that no word, clause, or sentence is rendered meaningless or superfluous (*Peacock v. Judges Retirement System* (1957), 10 Ill. 2d 498, 140 N.E.2d 684; *Shanahan v. Policemen's Annuity & Benefit Fund* (1976), 43 Ill. App. 3d 543, 357 N.E.2d 582), so too in reading decisions of a reviewing court it is proper to seek to attribute significance to every relief granted. Unless some performance is compelled by the writ of *mandamus*, then our prior award of that relief is totally lacking in meaning or significance. Such a result is illogical indeed.

Where the original opinion and the mandate of this court are silent as to the terms of a prayed-for writ which is ordered to issue, it is apparent that the mandate incorporates by reference the terms set forth in the complaint.[1] Incorporation by reference of the terms of a complaint is not unknown to the courts of our State. (*People ex rel. Bauer v. Henry* (1957), 10 Ill. 2d 324, 139 N.E.2d 737; *Union National Bank v. Hines* (1900), 187 Ill. 109, 58 N.E. 405.) As will be seen, an incorporation of the terms of the complaint adds substance to our mandate that "the writ of mandamus * * * should issue."

Foley filed a complaint in the Whiteside County court on July 14, 1976. That complaint contained the following prayer:

---

[1] See generally 26 Ill. L. & Prac. *Mandamus* §192 n.12 (1956), where the cited authorities establish that an order in a mandamus proceeding is sufficiently certain even if rendered so by reference to the petition.

"WHEREFORE, the Petitioner, Mary E. Foley, prays that a Writ of Mandamus may be issued by this Court directed to the Respondent Board of Education of Tampico Community Unit School District No. 4 of Whiteside and Bureau Counties, Illinois commanding them to forthwith assign the Petitioner, Mary E. Foley, as a full time teacher for the school year 1976-1977 *at a salary determined by the Respondent Board of Education commensurate with salaries of other teachers in the district* of similar experience and service and that the Petitioner, Mary E. Foley, be reinstated as a full time teacher pursuant to the terms of Section 24—12 of the School Code and be awarded *damages equal to the amount she would have received had she been employed by the Respondent Board of Education as a full time teacher for the school year 1976-1977 and later years to the date of the final order of this Court* and that such further orders may be made in the premises as may be required."(Emphasis added.)

Applying the previously discussed method of incorporating by reference the terms of the complaint in the mandate of appellate court, it follows that a writ should have been issued compelling the Board of Education to pay damages to appellant Foley equal to the amount she would have earned as a full-time teacher. Our mandate in *Foley I* was not silent as to the issue of damages.

To suggest that the trial court was under a duty to give consideration and effect to the natural implications resulting from this court's opinion, and the mandate directing the issuance of the writ of *mandamus* is anything but innovative. (See *Chicago Ry. Equipment Co. v. National Hollow Brake Beam Co.* (1909), 239 Ill. 111, 87 N.E. 872, and *PSL Realty Co. v. Granite Investment Co.* (1979), 76 Ill. App. 3d 978, 395 N.E.2d 641.) Even if our mandate were silent on the issue of damages, there is considerable authority holding that an award of damages is naturally implied from analogous mandates by our reviewing courts. (*Garrity v. Chicago & Northwestern Ry. Co.* (1886), 22 Ill. App. 404; *Metz v. Brodfuehrer* (1919), 214 Ill. App. 458; *Fry v. Radzinski* (1906), 219 Ill. 526, 76 N.E. 694; *Swanson v. Fisher* (1912), 171 Ill. App. 445.) Thus, not only does our mandate expressly provide for an award of damages, but it also implicitly authorizes such relief. See generally *Betenbenner v. Board of Education* (1949), 336 Ill. App. 448, 84 N.E.2d 569.

After the supreme court denied the Board of Education's leave to appeal, the order of that denial and our mandate were returned to the clerk of the circuit court pursuant to Rule 368 (Ill. Rev. Stat. 1977, ch. 110A, par. 368) with instructions to file the same. That mandate allowed the circuit court no general, discretionary authority to further litigate any issue. The only authority conferred on the circuit court by our mandate in

*Foley I* was the authority to issue a writ pursuant to "An Act in relating to writs" (Ill. Rev. Stat., 1978 Supp., ch. 110, par. 601). A recent opinion is instructive on this point:

> "The rule to be applied in the instant case is referred to in *Hamilton v. Faulkner* (4th Dist. 1968), 96 Ill. App. 2d 415, 418, 238 N.E.2d 631, where the court states:
>
>> 'Where, after reviewing a case on its merits, this court reversed the judgment of the trial court or reverses and remands the cause to that court with directions to enter a specific judgment, there is nothing for that court to decide or to determine. Neither the trial court nor the parties have any authority to take any further action in the case except such as is necessary to carry out the mandate of the reviewing court.'
>
> In the instant case, we reversed the judgment of the circuit court without remanding the case, as we have noted." (*Martin v. Prairie Rod & Gun Club* (1978), 65 Ill. App. 3d 952, 955, 382 N.E.2d 1295, 1297.)

Similarly, in the case at bar, we rendered a judgment without remanding the case, and nothing remained for the trial court "to decide or to determine."[2] There was no general reversal and remand as contemplated by the *Zerulla* court.

■ The second inquiry in the *res judicata* analysis involves the point at which the appellate court's mandate becomes final and conclusive. That occurred on September 28, 1978. On that date the Illinois Supreme Court denied leave to appeal. Where the supreme court denies further review of a decision by the appellate court, the issues adjudicated are final. (*Rubin v. Kohn* (1931), 344 Ill. 166, 176 N.E. 259.) As regards the conclusive character of the judgment, it is well settled that not all judgments which are reversed on appeal possess the requisite conclusiveness to have *res judicata* effect. (See generally 23A Ill. L. & Prac. *Judgments* §300 (1979).) Nevertheless, where "the reversal of the decree necessitates the rendition of a particular new decree indicated by the judgment of reversal," the reviewing court mandate has *res judicata* effect. (*McMahon v. Quinn* (1892), 140 Ill. 199, 29 N.E. 731, 732.) Likewise, where the only duty yet to be "performed by the lower court is purely ministerial, as the computation of an amount, etc.," the reviewing court mandate is not interlocutory but conclusive as to all questions. (*McMahon v. Quinn.*) After the Illinois Supreme Court denied further review of *Foley I* on September 28, 1978, all that remained for the lower court was the purely ministerial act of issuing the writ. That writ would compel the board of

---

[2] The power of the reviewing court to render a final judgment without need for remandment is set forth in Supreme Court Rule 366. (Ill. Rev. Stat. 1977, ch. 110A, par. 366.)

education to pay damages to appellant Foley as previously set forth. Inasmuch as the granting of the writ is entitled to *res judicata* effect, no subsequent clarification in the law can deny the granted relief. *People ex rel. First National Bank v. Russel* (1918), 283 Ill. 520, 119 N.E. 617; *Jenkins v. International Bank* (1884), 111 Ill. 462, *affirmed* (1888), 127 U.S. 484, 32 L. Ed. 189.

■ The mandate of the reviewing court is its judgment which when transmitted to the trial court re-invests that court with jurisdiction. (*Busser v. Noble* (1961), 32 Ill. App. 2d 181, 177 N.E.2d 251.) Thereupon, "a trial court must follow the specific directions of a higher court's mandate to the letter, the purpose of this rule (being) to insure the decree is congruent with the decision of the higher court." (*Hurst v. Papierz* (1973), 16 Ill. App. 3d 574, 580, 306 N.E.2d 532, *cert. denied sub nom. Papierz v. Rauth* (1974), 419 U.S. 835, 42 L. Ed. 2d 62, 95 S. Ct. 62.) In an earlier case decided by this court where the lower court strayed from the specific directions of our mandate, we held that:

> "The issues as presented in the original complaint, upon the filing of our mandate * * * are final and conclusive. The supplementary procedures as herein undertaken [by the circuit court], following the issuance of the mandate in the original case, were improper and are vacated * * *." (*Martin v. Prairie Rod & Gun Club* (1978), 65 Ill. App. 3d 952, 956, 382 N.E.2d 1295, 1297.)

So, too, in the case *sub judice*, the actions of the trial court which frustrated our mandate from *Foley I*, were improper and are vacated. Appellant was and still is entitled to a writ of *mandamus* which would compel the payment of the prayed for damages.

Orders denying damages vacated.

BARRY, J., concurs.

Mr. JUSTICE STENGEL, dissenting:

I respectfully dissent. The issues involved are not complicated. The law in Illinois is clear that an appellate court, on later appeal, is not bound by decision on former appeal where in another case the highest court of the same jurisdiction has decided the same matter differently.

Mary E. Foley was a tenured teacher dismissed by the Board of Education for economic reasons, and was not offered a teaching job held by a nontenured teacher because she was not legally qualified for that position. Section 24—12 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—12) provides that a tenured teacher dismissed for economic reasons may, within the one calendar year following dismissal, claim a position which is reinstated or created by the board of education so long

as the honorably dismissed tenured teacher is "legally qualified" to hold the new or reinstated position. We decided in *Hagopian v. Board of Educaion* (1978), 56 Ill. App. 3d 940, 372 N.E.2d 790, that Mary E. Foley was "legally qualified" under section 24—12 to claim the position of a nontenured teacher by virtue of her teaching certificate, and we ordered Mrs. Foley reinstated.

Thereafter, on November 20, 1978, Mrs. Foley filed a petition in the circuit court asking that she be reinstated and awarded damages pursuant to the appellate court order. While her petition was pending upon remand from this court and consequently still in the appellate process, the Illinois Supreme Court on January 29, 1979, in *Lenard v. Board of Education* (1979), 74 Ill. 2d 260, 384 N.E.2d 1321, ruled, directly contrary to the decision of this court, that a teacher's "legal qualification" is not determined solely by the teaching certificate but by the standards of the Illinois Office of Education set forth in Circular Series A, No. 160.

The supreme court stated that:

> "We conclude that the A-160 standards for teachers, * * * are to be incorporated into the meaning of the phrase 'legally qualified' as it appears in Section 24—12 of the Code. Because Petitioner did not meet the A-160 standards for the teaching position held by Carter, he was not 'legally qualified' for that position and therefore not entitled to be reinstated." 74 Ill. 2d 260, 268-69, 384 N.E.2d 1321, 1326.

Where the supreme court in a separate matter alters the pertinent law in the period between appeals, the appellate court on the second appeal may not follow its contrary prior judgment and must apply the law as mandated by the Illinois Supreme Court. In *Zerulla v. Supreme Lodge Order of Mutual Protection* (1906), 223 Ill. 518, 79 N.E. 160, the court stated:

> "[W]hile the determination of a question of law by the Appellate Court on the first appeal may, as a general rule, be binding upon it on the second appeal, it certainly cannot be binding on this court. Nor would the Appellate Court on the second appeal, we apprehend, be obliged to adhere to a proposition of law laid down on the first appeal, when this court had, since the first appeal, decided the precise question contrary to the rule announced by the Appellate Court. To so hold would lead to most illogical results." 223 Ill. 518, 520, 79 N.E. 160, 161.

This exception to the law of the case doctrine was applied in *Proesel v. Myers Publishing Co.* (1964), 48 Ill. App. 2d 402, 199 N.E.2d 73, where the appellate court had before it a second appeal in a libel action. During the interim between appeals, the pertinent law governing libel actions was changed by the Illinois Supreme Court so that the new law was

directly contrary to that previously enunciated by the appellate court. Because the law was altered, the appellate court reversed itself, stating:

"At that stage of the litigation this court's opinion became the law of the case, and in the conduct of further proceedings the trial court was bound to follow the principles therein set forth. This rule, however, is subject to the exception that the law of the case must be considered modified by pertinent decisions of higher courts handed down thereafter. Presbyterian Distribution Serv. v. Chicago Nat. Bank 36 Ill. App. 2d 1, 3, 183 N.E.2d 525; Zerulla v. Supreme Lodge Order Mut. Protection, 223 Ill. 518, 520, 79 N.E. 160; Awotin v. Atlas Exchange Nat. Bank, 275 Ill. App. 530, 546." 48 Ill. App. 2d 402, 404.

On February 22, 1979, almost a month after *Lenard* was filed, the trial court reinstated Mrs. Foley as required by our mandate, but refused to award her damages. Under the law as it now stands, Mrs. Foley would not be entitled to either reinstatement or back pay. It is the present law which should be applied to the case before us today, but the majority opinion disregards the present law and in addition to validating the reinstatement awards damages. Two wrongs cannot make a right.

The majority opinion does not cite authority sufficiently persuasive to justify a disregard for the clear pronouncement of our supreme court.

Their opinion assumes that the doctrine of *res judicata* is applicable because our mandate in the first appeal became final and conclusive on September 28, 1978, when the supreme court denied leave to appeal. That theory of argument overlooks recent law that denials of leave to appeal "of course, carry no connotation of approval or disapproval of the appellate court action." (*People v. Vance* (1979), 76 Ill. 2d 171, 390 N.E.2d 867, 872.) It is indisputable that the case at bar is still in the appellate process and must be subject to current law as announced by the Illinois Supreme Court.

The exceptions to the law of the case rule is fully discussed in *Union Light, Heat & Power Co. v. Blackwell's Administrator* (Ky. 1956), 291 S.W.2d 539, where the court said:

"The appellee submits that as strictly an appellate court, this court has no power to review its own final decision where the mandate has issued and the term ended. Now and then expressions to this effect may be found in our opinions in applying the law of the case rule or where the conditions did not involve consideration in a subsequent appeal of a grave error in the case. The argument is essentially the argument of res judicata. The law of the case doctrine is similar and analogous to but is not identical with the doctrine of res judicata. 5 CJS, Appeal and Error, §1822. There is, however, minority authority for the res judicata concept. Note 1

ALR 1270 cites cases to that effect from California, Montana and South Carolina. *But these cases seem to have been gathering moss through the year.* Later cases of the great majority of the courts which had so held are to the contrary. An example is McGovern v. Kraus, 200 Wis. 64, 227 NW 300, 67 ALR 1381, cited above, which as stated, abandoned the concept of res judicata.

With reference to the use of the strong term, 'res judicata,' in connection with the general rule, the late well-known Judge Lamm, writing for the court in Mangold v. Bacon, supra, 237 Mo 496, 141 SW 650, 655, said: 'Possibly that use of the term is a little due to poverty of our language in expressing nice shades of thought, or by way of analogy.' " (Emphasis added.)

I believe we should always recognize that the law as interpreted by the courts is a fluid thing. A change that occurs during the pendency of litigation may result in a different outcome but this does not vitiate the holding for it is held that there is no vested right in the continuance of a particular rule of law, and where it has been changed during the pending of an appeal, the case must be disposed of by the reviewing courts upon the law as it exists at the time of review. (*Phillips Petroleum Co. v. City of Park Ridge* (1958), 16 Ill. App. 2d 555, 565, 149 N.E.2d 344.

In *Lebold v. Inland Steel Co.* (7th Cir. 1943), 136 F.2d 876, *cert. denied* (1943), 320 U.S. 787, 88 L. Ed. 473, 64 S. Ct. 196, the court recognized that if it was wrong on a previous appeal it had a right and duty to correct is error.

By failing to follow the decision in *Lenard,* the majority opinion will deny the respondent school district equal protection of the laws under both the Illinois and United States constitutions. The Illinois Supreme Court has distinctively held that:

"Equal protection of the law requires that the rights of every person must be governed by the same rule of law under similar circumstances, and the mere arbitrary discrimination between different classes is a denial of equal protection of the law." *People v. Saltis* (1928), 328 Ill. 494, 160 N.E. 86, quoted in *People v. Nicholson* (1948), 401 Ill. 546, 553, 82 N.E.2d 656, 660.

Why should the Tampico Community Unit School District No. 4 be treated differently from the Fairfield No. 112 School District (defendant in *Lenard*), as well as other Illinois school districts?

This court should look to the effect of its own error rather than merely acknowledge that error was committed and let it go at that. It should wipe out the effect of the mistake in the first opinion rather than perpetuate the error which would otherwise result in great wrong to the school district and establish a bad precedent. That is essential justice.