NORMA RELPH, Plaintiff-Appellee, *v.* BOARD OF EDUCATION OF THE DePUE UNIT SCHOOL DISTRICT NO. 103 of BUREAU COUNTY, Defendant-Appellant.

Third District   No. 79-408

Opinion filed April 29, 1980.—Rehearing denied June 10, 1980.

ALLOY, P. J., dissenting.

Allen D. Schwartz and Lorence H. Slutzky, both of Robbins, Schwartz, Nicholas & Lifton, of Chicago, for appellant.

Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The defendant board of education of DePue Unit School District No. 103 of Bureau County appeals from the judgment of the circuit court ordering it to pay plaintiff Norma Relph $41,294 and to reinstate her as a teacher for the district.

Norma Relph had been a tenured teacher employed by the board to teach home economics on the high school level. In 1973 she was dismissed from her position for economic reasons. The following school year DePue hired two nontenured teachers for open positions as (1) a reading teacher in the upper elementary grades and (2) a half-time librarian and a half-time home economics teacher in the high school. Plaintiff Relph was not

offered either of those positions. She sought a writ of *mandamus* requiring the board of education to hire her based upon section 24—12 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12), which generally requires boards to offer recently dismissed tenured teachers any teaching positions which become available the year following their dismissal, provided only that the dismissed tenured teacher is "legally qualified" for such open position. Further, the writ would have required the board of education to pay Relph a salary "commensurate with other salaries of teachers in the district." The circuit court granted summary judgment for the defendant school board and rejected the plaintiff teacher's motion for summary judgment, finding, in pertinent part, that Norma Relph was not qualified to teach the available positions since she had not met requirements for those positions set forth in a regulation of the State Superintendent of Public Instruction. Circular Series A, No. 160 (A-160), regulations of the State Superintendent (now the State Board of Education), established necessary semester-hour requirements for teaching subjects in junior high, departmentalized upper elementary grades, and high school.

Relph appealed the circuit court's decision to this court (such appeal hereinafter designated *Relph I*), and we reversed the circuit court, with one justice dissenting. (*Relph v. Board of Education* (1977), 51 Ill. App. 3d 1036, 366 N.E.2d 1125.) The majority held that Norma Relph was qualified to teach the available positions by virtue, solely, of her certification to teach grades 6 through 12. We held that the requirements of Circular Series A, No. 160, were advisory only and not binding. This court reversed the circuit court, ordering judgment for the plaintiff on remand consistent with the views expressed in the majority opinion. Leave to appeal our decision was sought and denied by the supreme court. Our decision was made on August 26, 1977. Leave to appeal was denied on November 23, 1977. The mandate was returned to the circuit court with orders to proceed in accordance with the appellate court opinion.

Subsequent thereto, Relph, on May 4, 1978, filed her motion for damages, asking that she be granted damages in accordance with the opinion of this court. A stipulation setting forth the salary Relph would have earned had she been employed by the board of education and the salaries she did earn elsewhere was entered into between the parties. On January 12, 1979, while Relph's motion was pending before the circuit court, the Illinois Supreme Court issued its opinion in *Lenard v. Board of Education* (1979), 74 Ill. 2d 260, 384 N.E.2d 1321. Therein the court held that the standards for qualifications established by Circular Series A, No. 160, are incorporated into the meaning of "legally qualified" as used in section 24—12 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par.

24—12). It affirmed the judgment against a tenured teacher who had sought reinstatement but who was found not to have been legally qualified in the face of the requirements of A-160 (74 Ill. 2d 260, 269).

Thereafter, on February 8, 1979, the respondent board of education in this action filed a motion to reconsider with the trial court, arguing that the intervening decision of the Illinois Supreme Court in *Lenard* required entry of judgment for DePue. The trial court felt bound by our decision and denied the motion for reconsideration. It entered judgment for plaintiff Relph and fixed damages in the amount of $41,294. It ordered her reinstatement by the board of education as well.

In this second appeal, the board argues that the decision of the Illinois Supreme Court in *Lenard* should be given effect in the instant case and that judgment for the board should be entered. It asserts that the trial court was obligated to follow the decision in *Lenard* and that it ought to have followed *Lenard* and entered judgment for the defendant board of education. Plaintiff-appellee Norma Relph argues that our decision in the previous appeal herein is controlling and binding upon the circuit court and upon this court in this appeal. She argues that the decision in *Lenard* should have no effect upon this case and that the judgment on her behalf should be maintained. We agree.

■ In a recent decision of this court based upon a factual setting not dissimilar to the factual setting of the case at bar, we discussed at length the doctrine of *res judicata. (Hagopian v. Board of Education* (1980), 83 Ill. App. 3d 1097.) We there determined that when the mandate of the appellate court is final and conclusive and when the mandate does not order a general remand to the lower court, then that mandate is said to be *res judicata. (Hagopian v. Board of Education.)* If our mandate in *Relph I* possessed these requirements necessary for estoppel by judgment, then even a subsequent decision of the Illinois Supreme Court which determines that our view of the law was erroneous cannot be relied on to reach a different result. *People ex rel. First National Bank v. Russel* (1918), 283 Ill. 520, 119 N.E. 617; *Jenkins v. International Bank* (1884), 111 Ill. 462, *aff'd* (1888), 127 U.S. 484, 32 L. Ed. 189, 8 S. Ct. 1196.

The *Jenkins* court nearly a century ago recognized that "litigation must have a termination, and when a matter has been in issue and the parties before the court, and an opportunity afforded to assert their rights, they must be held concluded from afterwards litigating them in another proceeding." (111 Ill. 462, 468.) An error in law is no bar to application of this principle. "The rule of *res judicata* or estoppel by a judgment upon the same point, where there is no want of jurisdiction, has operation whether the judgment be erroneous or not." 111 Ill. 462, 471.

With this understanding of the scope of the doctrine of *res judicata*, we turn our attention to the mandate in *Relph I*, its content, and its characteristics. Our prior decision held that:

"For the foregoing reasons the judgment of the circuit court of Bureau County is reversed and remanded with directions to enter judgment in favor of the petitioner consistent with the views expressed herein." (*Relph v. Board of Education* (1977), 51 Ill. App. 3d 1036, 1041-42, 366 N.E.2d 1125, 1129.)

Here, as in the recent case of *Hagopian v. Board of Education*, there is no general remand. Rather, the authority and discretion of the court below is circumscribed by a remand with precise directions "to enter judgment in favor of the petitioner." If a general remand dooms the appellee's entitlement to an estoppel by judgment, we must conclude that her destiny in the instant proceeding is not unhappy.

From a contextual reading of *Relph I*, it is apparent that the judgment which was to be entered for Norma Relph was the previously rejected summary judgment motion. That motion urged the court to grant a writ of *mandamus* compelling the board of education to hire Relph and pay her a salary commensurate with other salaries of teachers in the district. With the supreme court's denial of leave to appeal on November 23, 1977, and with the return of our mandate to the circuit court on December 22, 1977, the lower court was obliged to follow the specific directions of our mandate to the letter. (*Hagopian v. Board of Education*; *Hurst v. Papierz* (1973), 16 Ill. App. 3d 574, 306 N.E.2d 532, *cert. denied sub nom. Papierz v. Rauth* (1974), 419 U.S. 835, 42 L. Ed. 2d 62, 95 S. Ct. 62.) To incorporate specific terms in the mandate by implied or express reference to pleadings in the record on appeal as the majority in *Relph I* opted to do is by no means unprecedented.[1] Clearly, upon remand, the trial court was limited to issuing a writ complying with such referenced terms:

"Where, after reviewing a case on its merits, this court reverses the judgment of the trial court or reverses and remands the cause to that court with directions to enter a specific judgment, there is nothing for that court to decide or to determine. Neither the trial court nor the parties have any authority to take any further action in the case except such as is necessary to carry out the mandate of the reviewing court." (*Hamilton v. Faulkner* (1968), 96 Ill. App. 2d 415, 418, 238 N.E.2d 631, 633. See also *Martin v. Prairie Rod & Gun Club* (1978), 65 Ill. App. 3d 952, 382 N.E.2d 1295.)

---

[1] An extended discussion of this practice is detailed in *Hagopian v. Board of Education*. Among the authorities cited therein are *People ex rel. Bauer v. Henry* (1957), 10 Ill. 2d 324, 139 N.E.2d 737; *Union National Bank v. Hines* (1900), 187 Ill. 109, 58 N.E. 405; Ill. L. & Prac. *Mandamus* §192, n.12 (1956).

In the case at bar for the trial court to take further action than that necessary to issue the writ of *mandamus* was clearly improper.

The question of whether the writ of *mandamus* should issue became final when the supreme court denied further review on November 23, 1977. (*Rubin v. Kohn* (1931), 344 Ill. 166, 176 N.E. 259; *Hagopian v. Board of Education.*) Further, the mandate of *Relph I* exhibited the conclusiveness necessary to satisfy the requirements of estoppel by judgment in that it "necessitate(d) the rendition of a particular new decree indicated by the judgment of reversal." (*McMahan v. Quinn* (1892), 140 Ill. 199, 29 N.E. 731; see also *Hagopian v. Board of Education.*) We simply fail to find any reason why our mandate in *Relph I* was not *res judicata* as to the questions there at issue. Norma Relph's judgment must someday be unassailable as against even the most vigorous litigant. We believe that day has come. We have no jurisdiction to consider this matter further. A prior judgment bars any attempt to relitigate that which has been decided.[2]

Appeal dismissed.

STOUDER, J., concurs.

Mr. PRESIDING JUSTICE ALLOY, dissenting:

I respectfully dissent from the majority opinion in this case. In support of my dissent in the instant case, I agree with Justice Stengel in his dissent in *Hagopian v. Board of Education* (1980), 83 Ill. App. 3d 1097, 1104, wherein he states that:

"The law in Illinois is clear that an appellate court, on later appeal, is not bound by decision on former appeal where in another case the highest court of the same jurisdiction has decided the same matter differently."

That is the rule of law which should govern in the instant case as well.

In the instant case, the majority opinion concludes that the judgment in this case "must someday be unassailable as against even the most vigorous litigant," and it then states the majority's belief that "that day has come." I disagree that this matter has ever been finally determined, so that the central issues are beyond attack on direct appeal.

I believe that the error in the majority's position in the instant case and in *Hagopian v. Board of Education* stems from a confusion as to the nature and application of the doctrine of *res judicata*. In *Hanna v. Read*

---

[2] The appellate court has power to give any judgment and make any order that ought to have been given or made. (Ill. Rev. Stat. 1977, ch. 110A, par. 366(a).) Where an action is barred by a prior judgment, the proper remedy is dismissal. Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(d).

(1882), 102 Ill. 596, 603, the Illinois Supreme Court discussed that doctrine:

> "Whether the adjudication relied on as an estoppel goes to a single question, or all the questions involved in a cause, the fundamental principle upon which it is allowed in either case is, that justice and public policy alike demand that a matter, whether consisting of one or many questions, which has been solemnly adjudicated by a court of competent jurisdiction, shall be deemed finally and conclusively settled in any subsequent litigation between the same parties, where the same question or questions arise, *except where the litigation is a direct proceeding for the purpose of reversing or setting aside such adjudication.*" (Emphasis added.)

Again, in *Ropacki v. Ropacki* (1933), 354 Ill. 502, 506-07, the Illinois Supreme Court outlined the doctrine of *res judicata*:

> "The doctrine of *res judicata* is based upon the principle that a matter, whether consisting of one or many questions, which has been adjudicated by a court of competent jurisdiction, shall be deemed finally and conclusively settled, *except upon direct review*, in any subsequent litigation between the same parties in which the same question or questions arise." (Emphasis added.)

This court's statement of, and application of, the doctrine is in accordance with the above-cited authorities. (*National Tea Co. v. Confection Specialties* (1977), 48 Ill. App. 3d 650, 653-54, 362 N.E.2d 1150.) What these cases establish is that the doctrine of *res judicata* operates to prevent a party, in a subsequent or second separate action, from relitigating the same cause of action or the same questions that have been previously determined in a prior suit between the same parties. The doctrine has application where there are two separate suits, and the second suit seeks to relitigate questions finally determined in the first suit. The doctrine does not apply to issues in a suit which are still subject to direct review on appeal, as the supreme court's statements of the doctrine, above quoted, indicate. In cases where direct review is still available, no final determination of the issues has occurred, and therefore, *res judicata* does not, and cannot, apply. Finality, as a requisite for application of *res judicata*, means a conclusive determination of a question or questions, such that further review, by direct appeal, is no longer available.

The appeals process must be exhausted in the first suit before *res judicata* applies to bar any subsequent attempt to relitigate the same issue or issues in a second suit. However, once there is a final decision that is no longer subject to attack on direct appeal, then, but not before then, the matter is concluded once and for all, even though the rule of law upon which the decision is based is reversed, in another case, by a higher court

or by the same court. (*People ex rel. First National Bank v. Russel* (1918), 283 Ill. 520, 119 N.E. 617.) There needs to be an end to litigation such that a judgment is unassailable even against the most vigorous litigant, but a final, conclusive end to a suit does not arrive until the direct appeal process has been exhausted. *Res judicata* then applies.

In the instant case, the majority opinion overlooks the fact that this case is still within the appellate process *on direct appeal,* and it thereby misapplies the doctrine of *res judicata* herein. The true *res judicata* question to be addressed is whether the issues involved in this case have ever been finally and conclusively litigated such that no further direct appeal concerning them is possible. The issue is not, as the majority opinion finds, whether our prior mandate in this case is a final order for the purposes of review by the Illinois Supreme Court. (*McMahan v. Quinn* (1892), 140 Ill. 199, 29 N.E. 731.) That question of finality is separate and completely different from the question of finality as related to and defined by the doctrine of *res judicata.* The *McMahan* case, relied upon by the majority, did not deal with *res judicata* at all.

Again, the question is: Has there been a final determination of the issues in this case such that there exists no possibility of change on direct review. The only answer to that question is that there has been no such final determination of the issues. The reason for this is clear. Both the instant case and, for that matter, the case of *Hagopian,* are still very much in the appellate process. (See *Hagopian v. Board of Education* (1980), 83 Ill. App. 3d 1097, 1104 (dissent of Mr. Justice Stengel).) The cases are still pending on direct appeal. The Illinois Supreme Court could hear appeals from this Court's decisions in the second appeals in both cases, upon appropriate leave to appeal petitions. While the supreme court has, in both cases, previously denied leave to appeal, such denials, "of course, carry no connotation of approval or disapproval of the appellate court action." (*People v. Vance* (1979), 76 Ill. 2d 171, 183, 390 N.E.2d 867, 872.) Neither did those denials, contrary to the majority's assertion, finally determine the issues in the cases, for direct appeal remained a possibility, after remand.

Since the remand after the first appeal in this case necessitated further proceedings below to determine the question of damages, the supreme court, looking at the petition for leave to appeal from that decision, may have concluded our decision was interlocutory. Neither our decision nor our mandate fully disposed of all the issues involved in the case. The damages issue had never been litigated, at any level, at that point in time. The supreme court may have wished to have the case completed and fully adjudicated at the trial level, including the issue of damages, before hearing any appeal. That approach would tend to avoid piecemeal or multiple decisions at the supreme court level. Given that our

decision in the instant case required a remand for a further hearing at the trial level, and since the damage issue remaining was subject to disagreement between the parties, the supreme court, when it denied the petition for leave to appeal our decision in *Relph I*, did not preclude hearing the case, in its entirety, on appeal from a decision reached after the damages question had been determined by the trial court. The result is that the Illinois Supreme Court, on proper petition for leave to appeal from any decision reached on this second appeal, may take the case. In that event, all questions and issues would be before it. As stated in *Weiland Tool & Mfg. Co. v. Whiteny* (1971), 44 Ill. 2d 105, 114, 251 N.E.2d 242:

> "This is the first time the cause has been before us on the merits and our review must necessarily cover all matters properly raised and passed upon in the course of this litigation."

Similarly, as noted in Justice Stengel's dissent, as far as the case of *Hagopian* is concerned, the supreme court could grant leave to appeal from the decision of this court in that case, and it would have before it all the issues properly raised during the course of litigation. As a result of the pendency of the instant case in the direct appeal process, and the attendant potential for review, on direct appeal, by the Illinois Supreme Court, it is clear that there has been no exhaustion of direct appellate review. Therefore, there has been no final determination of the issues such that *res judicata* applies.

Before addressing the rule of law which should govern in the instant case, some further comment upon the majority's authorities is necessary. The majority finds that the previous denial of leave to appeal by the supreme court renders all issues adjudicated final, citing *Rubin v. Kohn* (1931), 344 Ill. 166, 176 N.E. 259. The key factor in *Rubin v. Kohn* was not the denial of the leave to appeal petitions, but rather it was the fact that by such denial the appeals process in the first suit had been exhausted. That case dealt with two separate suits where the appellate process had been concluded in the first suit. As noted, the instant case, despite prior denial of leave to appeal, remains in the appellate process and subject to supreme court review on direct appeal. The majority opinion cites *McMahan v. Quinn* (1892), 140 Ill. 199, 29 N.E. 731, for the proposition that *res judicata* effect is given to a decree of the appellate court which, in reversing a decision, necessitates the rendition of a particular new decree. *McMahan v. Quinn* does not in any manner support such a proposition. That case dealt only with the question of whether an appellate decree was final such that a further appeal, at that time, would lie to the supreme court. The issue addressed therein was one of finality for further direct appeal purposes, not finality in terms of *res judicata*. *Res judicata* was not

involved in the *McMahan* decision. Neither, despite the majority's assertion, is *res judicata* involved in the instant case.

The issue, as framed by the parties in this second appeal in this case, touches important considerations concerning the interplay between circuit courts, appellate courts, and the supreme court, and the doctrine of the "law of the case." The law-of-the-case doctrine is analogous, in some respects, to the doctrine of *res judicata*, but the law of the case applies to cases still susceptible to further direct review, while *res judicata* does not. (See *Hagopian v. Board of Education* (1980), 83 Ill. App. 3d 1097, 1104 (dissent of Mr. Justice Stengel).) Broadly speaking, the law-of-the-case doctrine requires that once a question has been determined in a case it is not subject to re-examination by the court making the determination. In the appellate context, it has been noted that "there must be an end to litigation, and under the doctrine of 'law of the case,' a question determined on appeal is considered settled and will not be re-examined on subsequent appeal." (*Presbyterian Distribution Service v. Chicago National Bank* (1962), 36 Ill. App. 2d 1, 3, 183 N.E.2d 525.) It has also been stated that on a second appeal, "the only question properly presented is whether the order or decree is in accordance with the mandate and directions of the court." (*People v. National Builders Bank* (1957), 12 Ill. 2d 473, 147 N.E.2d 42. See *Martin v. Prairie Rod & Gun Club* (1978), 65 Ill. App. 3d 952, 382 N.E.2d 1295.) The appellate court, in *Presbyterian Distribution Service v. Chicago National Bank*, noted that the law-of-the-case doctrine is not without limitations, saying:

> "There are exceptions, such as a case in which a higher court has in the interval between appeals announced a contrary law. *Zerulla v. Supreme Lodge*, supra; *Awotin v. Atlas Exchange Nat. Bank of Chicago*, 275 Ill. App. 530." (36 Ill. App. 2d 1, 4.)

In *Zerulla v. Supreme Lodge* (1906), 223 Ill. 518, 520, 79 N.E. 160, the Illinois Supreme Court noted:

> "Where the Appellate Court or this court, on the first appeal to it, announces a particular view of the law governing the case and reverses and remands the case for further proceedings in accordance with the views announced, if the case is again brought before such court for review the former decision is binding on the court making it, and the questions decided and determined by it on the first appeal are not open for reconsideration on the second appeal. But while the determination of a question of law by the Appellate Court on the first appeal may, as a general rule, be binding upon it on the second appeal, it certainly cannot be binding on this court. *Nor would the Appellate Court on the second appeal, we apprehend, be obliged to adhere to a proposition of law laid down on the first appeal, when this court*

*had, since the first appeal, decided the precise question contrary to the rule announced by the Appellate Court.* To so hold would lead to most illogical results." (Emphasis added.)

Zerulla did not deal with *res judicata*, for there, as in the instant case, *res judicata* did not apply, since the prior appeal had not finally and conclusively determined the issues. The exception set forth and applied in *Zerulla* for intervening decisions by the supreme court finds express restatement in *Proesel v. Myers Publishing Co.* (1964), 48 Ill. App. 2d 402, 404, 199 N.E.2d 73, and in *Presbyterian Distribution Services v. Chicago National Bank.* This court, in *City of Lockport v. County Board of School Trustees* (1976), 42 Ill. App. 3d 578, 580, 356 N.E.2d 420, recognized another exception to the law-of-the case doctrine, specifically relying, with approval, upon both *Zerulla* and *Presbyterian Distribution Services.* One rationale for the exception where an intervening decision by the supreme court is issued between appeals in the appellate court was noted by the court in *Weiland Tool & Manufacturing Co. v. Whitney* (1968), 100 Ill. App. 2d 116, 124, 241 N.E.2d 533, *rev'd on other grounds* (1969), 44 Ill. 2d 105, 251 N.E.2d 242:

"Subsequent correction of the decision in a former appeal by an appellate court after contrary authority from a higher court whose rulings of law are controlling makes appeal to the Supreme Court unnecessary and actually brings an end to litigation."

The exception to the law-of-the-case doctrine set forth in *Zerulla*, and its underlying concern for efficiency and equity on the appellate level, calls for us to reverse our prior judgment in this case, directed by us in the previous appeal, on the basis of the intervening, and controlling supreme court decision in *Lenard v. Board of Education* (1979), 74 Ill. 2d 260, 384 N.E.2d 1321. The majority accepts that the decision in *Lenard* establishes as the law of this State a rule directly contrary to that set forth by this court in our prior decision in *Relph I.* The court in *Lenard* held that the standards for qualifications established by Circular Series A No. 160 are incorporated into the meaning of "legally qualified" as used in section 24—12 of the School Code. Under the exception to the law-of-the-case doctrine discussed, I would apply that holding of *Lenard* to the issues in the instant case and reverse our prior, erroneous judgment in *Relph I.* Accordingly, I dissent from the majority's conclusions and reasoning.

A further comment is called for in this case. Because of the importance of the issues implicated in this case to the credibility, efficiency and integrity of the judicial process, and especially the appellate aspects of that process, the case is one in which supreme court consideration and resolution is appropriate and necessary. I would urge that court to accept the appeal and make a final determination of the issues raised in this cause.